UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

Edward L. Henderson and
Andrea L. Henderson

    Debtors.

Chapter 7
No. 15-10325-j7

## MOTION FOR RELIEF FROM STAY

Wells Fargo Bank, N.A. ("Creditor"), through its attorneys Scott & Kienzle, P.A. (Paul M. Kienzle III), moves this Court for relief from stay against Edward L. Henderson and Andrea L. Henderson ("Debtors"), on the following grounds:

1. Debtors filed bankruptcy on February 13, 2015.

2. On or about August 9, 2013, Debtors executed and delivered to Creditor a Personal Loan Agreement and Security Agreement ("Agreement") in the amount of $20,099.00, with payments of $554.16 per month. A copy of the Agreement is attached hereto as Exhibit A.

3. Pursuant to the Agreement, Debtors granted a security interest in the following collateral:

    2007 Toyota FJ Cruiser, VIN JTEBU11F270078551

5. The security interest was properly perfected in the collateral by filing a lien with the Department of Motor Vehicles. A copy of the Certificate of Title is attached hereto as Exhibit B.

6. As of May 1, 2015, Debtors owe $14,915.66.

7. Creditor has not been offered adequate protection for its interest in the collateral.

8. Creditor last received a payment on this account on January 30, 2015. The account is past due in the amount of $1,623.48.

9. Debtors have failed to provide proof of insurance.

10. Upon information and belief, the collateral is not necessary for an effective reorganization, and the collateral is of inconsequential value and benefit to the Estate.

11. Creditor is entitled to possession of the collateral.

12. Pursuant to Local Bankruptcy Rule 9013-1(b), undersigned counsel faxed debtors' counsel a letter requesting concurrence. Because a response was not received, opposition is assumed.

WHEREFORE, Creditor respectfully requests that this Court lift the stay so that Creditor may pursue its security interest in the collateral, that the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived and for such other relief as the Court deems proper.

                                SCOTT & KIENZLE, P.A.

                                By: <u>Submitted electronically 05/05/15</u>
                                        Paul M. Kienzle III
                                        Attorney for Creditor
                                        Box 587
                                        Albuquerque, NM 87103-0587
                                        505/246-8600; FAX: 246-8682

<u>Plaintiff's or Creditor's Federal Disclosure</u>: This communication is from a debt collector. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, we will assume this debt is valid. If you notify this office in writing within 30 days, this office will obtain verification of the debt and mail you the verification or provide you with the name and address of the original creditor, if different from the current creditor. This communication, from a debt collector, is an attempt to collect a debt, and any information obtained will be used for that purpose.

/lsp

Wells Fargo Bank, N.A.                 PERSONAL LOAN AGREEMENT

Borrower Name: ANDREA L HENDERSON
Co-Borrower Name: EDWARD L HENDERSON
Loan Amount: **20,099.00**

In this Personal Loan Agreement (the "Agreement"), the words "you" and "your" refer to each Borrower and Co-Borrower who signs this Agreement. The words "Bank," "we," "our," and "us," refer to Wells Fargo Bank, N.A. Each person who signs this Agreement will be individually bound by its terms and will be directly liable to the Bank for the entire amount owed.

**Promise to Pay**
You promise to pay us the total of the principal loan amount of **$20,099.00** plus interest, late charges, any fees, and other obligations due under this Agreement or the terms of the accompanying Security Agreement.

**Payments**
You will pay this loan by making payments of principal and interest in lawful money of the United States in **48** installments of **$550.36** beginning on **09-01-2013** and continuing until **08-01-2017** at which time all unpaid principal and accrued interest and any other fees and amounts owed and remaining unpaid shall be immediately due and payable. You have the right to pay this loan in full and without a prepayment penalty at any time before the final payment is due. If you make a partial prepayment there will not be any change in the amount of your monthly payment or delays in the due dates of those payments unless we have agreed in writing to such a change.

**Recording and Perfecting Bank's Security Interest**
It is important that you promptly take all action necessary to record and perfect our first priority security interest in the Collateral described in the Truth-in-Lending Disclosure Statement below.

IMPORTANT: The Interest Rate on this loan will increase if, within 180 days after you receive the benefit of the funds from this loan transaction, we do not receive a security agreement executed by all owners of the Collateral and the original certificate of title or lien card certificate for the Collateral from the state motor vehicle or vessel titling agency showing correct ownership and vehicle/vessel information and our name as the properly recorded first lien holder. See "**Interest**" section below for details about the Interest Rate and rate increase.

It is your obligation to record and perfect our security interest in the Collateral. You must obtain all necessary title documents, lien releases and other documents, pay all required costs, fees and taxes, and sign (have signature notarized where required) and file all necessary documents with your state or local motor vehicle or vessel titling and registration agency to record and perfect our security interest to ensure that we are the first lien holder on the certificate of title for the Collateral.

**Interest**
Interest will be calculated daily on the unpaid principal balance of this loan at an annual rate of **14.240%** (the "Interest Rate"), subject to the following:

> The Interest Rate on this loan will increase to **19.240%** if we do not receive a security agreement executed by all owners of the Collateral and the original certificate of title or lien card certificate for the Collateral from the state motor vehicle or vessel titling agency showing correct ownership and vehicle or vessel information and our name as the properly recorded first lien holder within 180 days after you receive the benefit of the funds from this loan transaction. This increased rate will become effective 181 days after the date you receive the benefit of the funds from this loan



NA-8600 (05/2012)                                                                                         1/11
                                                                                     Documents Processed 08-08-2013, 13:11:55

transaction and will remain in effect until we have received such original certificate of title or lien card certificate showing correct ownership and vehicle or vessel information and our name as the properly recorded first lien holder, at which time the Interest Rate will be adjusted to **14.240%**.

In addition, you received a discount of 0.500% that is included in your Interest Rate. You received this discount because you currently have a Wells Fargo Checking Package® or Wells Fargo Crown Banking® Checking account, as defined in your Consumer Account Fee and Information Schedule, and you agreed to provide pre-authorized electronic payments, from a Wells Fargo checking or savings account. If this relationship terminates for any reason or you discontinue making pre-authorized electronic payments from a Wells Fargo checking or savings account, you will lose this discount and your Interest Rate will increase by 0.500%, resulting in a corresponding increase in your APR. Any Interest Rate will be effective immediately and will remain in effect for the remaining term of this Agreement.

The rate increase provisions act independent of one another, meaning that your rate could increase by a total of 5.500 percentage points if you fail to promptly provide us with the original certificate of title or lien card within 180 days after you receive the benefit of the funds from this loan transaction and your discount is removed because this relationship terminates for any reason or you discontinue making preauthorized electronic payments from a Wells Fargo checking or savings account.

Interest will begin to accrue on the date the principal is advanced. Interest is calculated daily based on the actual number of days elapsed in a 365-day year (366-day leap year) until this loan is paid in full. Interest accrues at the same rate after maturity as during the term of this Agreement. The Finance Charge you owe will be less if you pay early and more if you pay late. Any resulting adjustments to the Total of Payments will be added to or reduced from your final payment. The Loan Origination Fee, if any, is a prepaid finance charge. It is withheld from the proceeds of this Agreement, is fully earned on the date hereof and is not subject to refund.

To the extent that any fees or amounts are added to the principal balance, they will thereafter bear interest at the contract rate, and you agree to pay this interest. Payments will be applied to amounts you owe in the order we choose, which may vary from time to time without notice to you.

**Payments Timing and Location**
Your payments may be made as provided below. You must allow adequate time for payment to reach us.

<u>By Mail</u>. Payments made by mail should be sent to the remittance address indicated on your periodic statement or, if you get no statement, to Wells Fargo Auto Finance, P. O. Box 660217, Dallas, TX 75266-027. We reserve the right to change this payment address at a future date, but if we do so, we will notify you of the new address. Properly submitted payments received by mail prior to the 3:00 p.m. cut off time in the time zone at the applicable remittance address will be credited to your Account as of the business day received. Saturdays, Sundays and bank holidays are not business days. Payments received after the cut off time will be credited as of the next business day. To be properly submitted, payments must be accompanied by the remittance portion of your statement and mailed in the envelope provided with your statement using ordinary First Class postage. Payments not properly submitted may require additional research resulting in credit to the account on the next business day after the business day of receipt.

<u>By Other Payment Methods</u>. Payment received in any other manner, for example, at a branch, by phone, online, or at an ATM, and received prior to the established cut off time, will be credited as of the business day received. Payments made after established cut off times will be credited as of the next business day. Cut off times for payments received other than by mail will vary by payment method. Information about cut off times is available at the time and place you make the payment.

**Optional Pre-Authorized Electronic Payment (ACH) Authorization**

[X] If checked, you will provide us with a voided check and your signature on this Agreement authorizes Wells Fargo Bank, N.A., its successor and assigns, to take each payment due including any additional charges I owe on my account, such as late charges, past due monthly payments, returned payment fees, collateral protection insurance, Wells Fargo Smart Payment Plan fe ~~~~~~~~~~~~ ~~~ ~his loan or other amounts then owing under this Agreement from your account numb ated at **WELLS FARGO**. Our standard practice is to provide a prior notice of any tra~~~~~~~ ~~~~ ~~~~~~~ three times the sum of the regularly scheduled payment plus any late charge amount. You have the right to receive notice of all transfers varying from the regular payment amount but unless you provide written instructions exercising this right, your signature confirms our standard practice as your option. This authorization will remain effective until all amounts due under this Agreement are paid in full, we notify you of the revocation or you notify us that you wish to revoke your authorization and we are given a reasonable opportunity to act on your request. You may revoke this authorization by sending a written notice to Wells Fargo Auto Finance, P.O. Box 29704, Phoenix, AZ 85038-9704, or by calling us at 1-800-55WELLS (1-800-559-3557), TDD: use relay service.

The following notice applies to co-signers (persons that are responsible for payment of this Loan, but receive no goods, services or money in return for signing this Agreement).

NOTICE TO CO-SIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower. The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing* your wages, etc. If this debt is ever in default, that fact may become part of your credit record. This notice is not the contract that makes you liable for the debt.

*Notwithstanding use of the word "garnishing" in this disclosure, state law prohibits garnishment of wages in the following states: Pennsylvania, North Carolina, South Carolina and Texas.

**The remainder of this page is intentionally left blank**

| Truth-in-Lending Disclosure Statement | | | |
|---|---|---|---|
| **"ANNUAL PERCENTAGE RATE"** The cost of your credit as a yearly rate. | **"FINANCE CHARGE"** The dollar amount the credit will cost you.* | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled.* |
| 14.512% | $ 6,417.28 | $20,000.00 | $26,417.28 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | Payments are Due Monthly beginning 09-01-2013 |
|---|---|---|
| 48 | 550.36 | And on the same day each month thereafter. |

**Late Charges:** If any payment is not received within ten days of when it becomes due, you promise to pay a late charge of $39.

**Insurance:** You may obtain casualty insurance from anyone you want who is acceptable to us. Maximum deductible is $1,000.00.

**Prepayment Penalty:** There is no penalty if you pay off early.

**Security:** As security for payment and performance of this obligation you grant bank a security interest in the motor vehicle described in the associated Security Agreement (the "Collateral").

**Additional Information:** See the rest of this Agreement for more information about nonpayment, default and any required repayment in full before the scheduled date.

*Asterisk Means Estimate

**Variable Rate Feature.** The Interest Rate disclosed above may increase in the following circumstance(s):

**Failure to Record Bank's Security Interest:** Your Interest Rate may increase by 5% with a corresponding increase in payment amount if we do not receive a Security Agreement executed by all owners of the Collateral and the original certificate of title or lien card certificate for the Collateral from the state motor vehicle agency showing correct ownership and vehicle information and our name as the properly recorded first lien holder (secured party) within 180 days after you receive the benefit of the funds from this loan transaction.

**Loss of Relationship Discount:** In addition, you received a discount of 0.500%, that is included in your Interest Rate. You received this discount because you currently have a Wells Fargo Checking Package® or Wells Fargo Crown Banking® Checking account, as defined in your Consumer Account Fee and Information Schedule, and you agreed to provide pre-authorized electronic payments, each month, from a Wells Fargo checking or savings account. If this relationship terminates for any reason, or you discontinue making pre-authorized monthly electronic payments from a Wells Fargo checking or savings account, you will lose this discount and your Interest Rate will increase by 0.500%. Any increase will take the form of higher payment amounts.

For example, if your loan amount is $15,000, Interest Rate is 12%, and with 60 monthly payments of $333.67, your monthly payment in the above example would increase to $374.81.

Other Transaction Information

Security interest filing fees: $5.00

Loan Origination Fee: $99.00

Principal Amount (the Amount Financed plus any Loan Origination Fee): $20,099.00

NOTICE TO CONSUMER:

You understand that:

- **CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT (INCLUDING THE REVERSE SIDES OF ALL PAGES) BEFORE YOU SIGN IT.**
- You should not sign this if it contains any blank spaces.
- You are entitled to an exact copy of this and any other agreement that you sign.
- You have the right to prepay the unpaid balance due under this Agreement at any time without penalty.
- THE COLLATERAL IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION WITHOUT PRIOR NOTICE TO YOU. IF IT IS REPOSSESSED AND SOLD, AND ALL AMOUNTS DUE TO US ARE NOT RECEIVED IN THE SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.
- This loan is made for personal, family or household purposes, but you may not use any portion of this loan to (a) pay post secondary (after high school) education expenses or (b) refinance or consolidate an existing loan made for such purposes.

BY SIGNING BELOW, YOU AGREE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT AND THE ACCOMPANYING SECURITY AGREEMENT, INCLUDING THE TRUTH IN LENDING DISCLOSURE BEGINNING ON PAGE 4 AND THE ARBITRATION AGREEMENT BEGINNING ON PAGE 9.
IF YOU ARE A CO-SIGNER (PERSONS THAT ARE RESPONSIBLE FOR PAYMENT OF THIS LOAN, BUT RECEIVE NO GOODS, SERVICES OR MONEY IN RETURN FOR SIGNING), PLEASE READ THE "NOTICE TO CO-SIGNER" ABOVE BEFORE SIGNING THIS AGREEMENT.

X _Andrea Henderson_  8-9-13
Borrower: ANDREA L HENDERSON    Date

X _[signature]_  8-9-13
Co-Borrower: EDWARD L HENDERSON    Date

Wells Fargo Bank, N.A.

## PERSONAL LOAN AGREEMENT ADDITIONAL TERMS AND CONDITIONS

**Default**
In this Section, the following will apply based on the state in which you reside according to our records at the time of enforcement:

**If you reside in Idaho, Kansas, Maine, Missouri, Nebraska or South Carolina,** you will be in default if you: (1) fail to make any payment when due; or (2) anything else happens that causes us to reasonably believe that the prospect of payment, performance, or realization on the Collateral is significantly impaired.

**Iowa Residents.** You will be in default if: (1) you fail to make a payment within 10 days after it is due; or (2) you fail to observe or perform any other covenant, breach of which materially impairs the condition, value or protection of our right in the Collateral or materially impairs your prospect to pay amounts due.

**Massachusetts Residents.** You will be in default if: (1) you fail to make a payment when due; or (2) anything else happens which substantially impairs the value of the Collateral.

**New Hampshire Residents.** To the extent this loan is subject to the New Hampshire Retail Installment Sales of Motor Vehicles Act (N.H. Rev. Stat. Ann. § 361-A:1 et seq.), you will be in default if: (1) you fail to make a payment when due; (2) you fail to insure the Collateral against loss; (3) you remove the Collateral from the United States or Canada without our permission; (4) you sell, rent, lease or otherwise transfer an interest in the Collateral without our permission; (5) A bankruptcy proceeding is commenced by or against you; or (6) you otherwise significantly impair the realization of the Collateral, limited to seizure of the Collateral by law enforcement officials, encumbrances of the Collateral, abandonment of the Collateral, or loss, theft, or destruction of the Collateral that is not covered by insurance. To the extent this loan is not subject to the New Hampshire Retail Installment Sales of Motor Vehicles Act, default will be governed by the "Other" subsection below.

**If you reside in Wisconsin,** you will be in default if you (a) have an amount outstanding exceeding one full payment which has remained unpaid for more than 10 days after its scheduled or deferred due date, or you fail to pay the first payment or the last payment within 40 days of its scheduled or deferred due date or (b) fail to observe any other covenant of this Agreement, breach of which materially impairs the condition, value or protection of our right to the Collateral or your ability to pay amounts due under this Agreement. The amount outstanding shall not include any delinquency or deferral charges and shall be computed by applying each payment first to the installment most delinquent and then to subsequent installments in the order they come due.

**If you reside in any other state,** you will be in default if you fail to comply with any of the terms or conditions of this Agreement or any related Security Agreement. Unless prohibited by law, you will also be in default upon your death, bankruptcy, or insolvency; if a bankruptcy petition is filed by or against you; if you fail to make payments on any other loans or violate the terms of any other Agreement with us or any of our Affiliates; if you made any misrepresentations on your loan application; if you do not keep the required insurance on the Collateral for this loan, or you fail to pay any related taxes on the Collateral when due; if you use the Collateral for this loan for an unlawful purpose or the Collateral is seized, confiscated or levied upon by governmental or other legal process; if the Collateral is lost, destroyed, stolen or damaged beyond repair or taken out of the country; or a material adverse change occurs in your financial condition or we believe the prospect of performance or payment of the indebtedness is impaired; anything else happens that we reasonably believe in good faith endangers the Collateral or your ability to

pay this loan, or if we believe in good faith that the prospect of your payment or performance of your obligations under this Agreement is impaired.

### Rights on Default
Upon the occurrence of any event of default, we shall have the right to declare immediately due and payable all or any indebtedness under this Agreement, together with all other rights, privileges, powers and remedies provided by law. We may waive or delay enforcing any of our rights under this Agreement without losing them. Any waiver of any provision or condition of this Agreement, or any consent or approval of a default hereunder, must be in writing and shall be effective only to the extent set forth in writing.

To the extent allowed by applicable law, while you are in default, we may, without notifying you and without judicial process, take possession of the Collateral wherever it may be found, including your premises. We may dispose of the Collateral in any manner we deem commercially reasonable, including without limitation public or private sales. Any proceeds of any disposition of the Collateral, or any part thereof, may be applied by us to payment of expenses incurred by us in connection with the disposition of the Collateral, including reasonable attorneys' fees, and the balance of such proceeds may be applied to the payment of the indebtedness under this Agreement and in such order of application as we may elect. If such proceeds are not sufficient to pay what you owe, you will still owe us the difference, unless limited by law. If there is a surplus, we will pay the surplus to you, unless we must pay it to someone else, such as a junior lienholder.

### Fees and Charges
In addition to other amounts owed hereunder, you agree to pay the following non-refundable fees and charges, which will be owed, unless applicable law requires a lower charge or prohibits any charge:

**Late Charge.** If any scheduled payment is not received within ten days of its due date, you will be assessed a $39 Late Charge.

**Return Payment Fee.** A Return Payment Fee of $39 will be charged if you make a payment with a check, electronic debit or by any other method, which is not honored for any reason.

**Collection Costs and Attorneys' Fees.** You must pay our collection costs, reasonable attorneys' fees, and other expenses of enforcing our rights under the terms and conditions of this Agreement, subject to applicable law.

Loan Origination Fee. An origination fee of **$99.00**. You understand that the origination fee will be withheld from your loan proceeds and is fully earned when charged.

**Other Charges.** I agree that if, while this Agreement remains unpaid, I request other services related to servicing or administering my loan for which you have a scheduled charge, I will pay you the then current fee for such services or request if you agree to perform such services or request.

### Sharing Information
You agree that we may provide your name, address, and other identifying information, together with our transactional and experiential information about you and your accounts with us, to credit reporting agencies and others for business purposes consistent with our policies. Please refer to our separate brochure entitled "*Wells Fargo Privacy Policy*" for more information on our policies regarding use and sharing of information.

### Reevaluation of Your Credit Worthiness
We may examine and evaluate your credit worthiness and your ability to honor your obligations under

this Agreement at any time. In doing so we may use any source of information legally available to us as a creditor. We may ask you for relevant additional or updated information and you agree to provide us with this information. We may obtain information from a consumer reporting agency or other third party. We may contact your employer to verify income. The above are examples of, not limitations to, the type of information we may obtain and use in making decisions regarding your loan.

### Accord and Satisfaction and Irregular Payments
We may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement without losing any of our rights under this Agreement. Our acceptance of checks or money orders labeled "payment in full" or words to that effect will not constitute an accord and satisfaction or a waiver of any rights we have to receive full payment. Please note, if you intend to pay your loan in full with an amount less than the total balance owing on your loan, payment must be sent to Wells Fargo Auto Finance, P.O. Box 29715, Phoenix, AZ 85038-9715, Attn: Payoff Exceptions, and not to the regular payment address specified above or in subsequent notices to you. Please note that such payments will not discharge your full debt.

### Change of Name, Address, Phone Number or E-mail Address
You must notify us immediately of any change in your name, residence, mailing address, phone number, including any wireless telephone number(s) at which you agree to be contacted, and, if you provide it to us, your e-mail address. We may rely on the accuracy of the information you provide us with and we may, but are not obligated to, use any source available to us to update and validate this information.
**California Residents:** We may also obtain information at any time from the California Department of Motor Vehicles. You agree to waive the address confidentiality requirements section of the California Vehicle Code (Section 1808.21).

### Governing Law
This Agreement shall be governed by and interpreted in accordance with federal law and the laws of the State of South Dakota. To the extent this Agreement is construed to be governed by Maryland law, *Md. Code Ann., Commercial Law*, § 12-1001- *et seq.* shall apply.

### Notices
We will notify you of any action taken on your loan or any change in terms or conditions as required by law or this Agreement. When notice is not required by law, we may take any action and exercise any of our rights under this Agreement without notice or demand.

### Important Notice to our customers who contact us or who we contact by phone
To ensure that your inquiries are handled promptly, courteously, and accurately, some of the telephone calls between you and us or any of our affiliates may be monitored and recorded by us and our affiliates to enhance service to you.

### Important Notice to our customers regarding contacts
You agree, in order for us to service the loan or to collect any amounts you owe, we may from time to time make calls and/or send text messages to you at the telephone number(s) associated with your loan, including wireless telephone numbers that could result in charges to you. The manner in which these calls or text messages are made to you may include, but is not limited to, the use of prerecorded/artificial voice messages and/or an automatic dialing device. You further agree that in order for us to service the loan or to collect any amounts you owe, we may send e-mails to you at any e-mail address you provide to us.

### Separation of Unlawful Provisions
If any provision of this Agreement is determined to be unlawful, the rest of the Agreement will stand and the unlawful provision will be deemed amended to conform to law.

### Enforcement of Rights
We may waive or delay enforcing any of our rights without losing them. We may waive or delay

enforcing any of our rights as to one person without affecting the obligation of any other person. If there are joint borrowers, a default by one of you will be a default by all of you. A court decree for divorce or separation or a non-court mutual agreement does not affect our ability to enforce this Agreement or collect the outstanding amount owing against all jointly liable parties if we were not a party to the decree or agreement.

### Information Reporting Disputes

If you believe we have reported incorrect information about your account to a credit bureau, you may notify us by writing to us at Wells Fargo Auto Finance, P.O. Box 29704, Phoenix, AZ 85038-9704, Attn: Resolution Team. Please include your account number and a description of the information that is incorrect.

### DISPUTE RESOLUTION PROGRAM: ARBITRATION AGREEMENT

a. <u>Binding Arbitration</u>. If a Dispute arises between You and Us, it will be resolved through the arbitration process as set forth in this section. A "Dispute" is any unresolved disagreement between You and Us. It includes any disagreement relating in any way to the Loan or related services or matters; to Your use of any of Our banking locations or facilities; or to any means You may use to access Our services. It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims. "Disputes" include disagreements about the meaning or application of this Arbitration Agreement. This Arbitration Agreement shall survive the payment of your Loan and the termination of the Loan Agreement. **YOU AGREE THAT BY SIGNING THE NOTE, YOU AND WE ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT.** As the sole exception to this Arbitration Agreement, You and We retain the right to pursue in small claims court any dispute that is within that court's jurisdiction. If either You or We fail to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.

b. <u>Arbitration Procedure; Severability</u>. You or We may submit a dispute to binding arbitration at any time, regardless of whether a lawsuit or other proceeding has been previously commenced. NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. Each arbitration, including the selection of the arbitrator(s) shall be administered by the American Arbitration Association (AAA), or such other administrator as You and We may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules"). To the extent that there is any variance between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement shall control. Arbitrators must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the dispute. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. The Parties agree that in this relationship: (1) The Parties are participating in transactions involving interstate commerce; and (2) This agreement and any resulting arbitration are governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that act is inapplicable, unenforceable or invalid, the laws of the state that govern the relationship between You and Us. If any of the provision of this Arbitration Agreement dealing with class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, that invalid provision shall not be severable and this entire Arbitration Agreement shall be unenforceable.

c. <u>Rights Preserved</u>. This Arbitration Agreement does not prohibit You or Us from exercising any lawful rights or using other available remedies to preserve, foreclose or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain

provisional or ancillary remedies such as injunctive relief, attachment, garnishment or the appointment of a receiver by a court of competent jurisdiction. All statutes of limitations applicable to any dispute apply to any arbitration between You and Us. The provisions of this Arbitration Agreement shall survive termination, amendment or expiration of the Loan relationship or any other relationship between You and Us.

d. <u>Fees and Expenses of Arbitration</u>. Arbitration fees shall be determined by the rules or procedures of the Arbitration Administrator, unless limited by applicable law. Please check with the Arbitration Administrator to determine the fees applicable to any arbitration you may file. If the applicable law of the state in which you opened your account limits the amount of fees and expenses to be paid by you, then no allocation of fees and expenses to you shall exceed this limitation. Unless inconsistent with applicable law, each of us shall bear the expense of our own attorney, expert and witness fees, regardless of which of us prevails in the arbitration.

e. <u>California Residents Only</u>. In the event that You are a California resident, this Arbitration Agreement applies only to disputes in which You seek for yourself individually amounts in excess of the jurisdictional limit of Small Claims Court, excluding attorneys' fees and costs.

**STATE LAW NOTICES**
Each of the following notices applies only to the residents of the state indicated:

**IOWA RESIDENTS:** IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

**MISSOURI RESIDENTS**: ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**RHODE ISLAND RESIDENTS**: NONNEGOTIABLE CONSUMER NOTE

**TEXAS RESIDENTS:** <u>This written loan agreement represents the final agreement between you and us and may not be contradicted by evidence of previous, current or future oral agreements between you and us. There are no unwritten oral agreements between you and us. Any future changes to this agreement must be in writing to be enforceable.</u>
NOTICE TO CONSUMER: UNDER TEXAS LAW, IF YOU CONSENT TO THIS AGREEMENT, YOU MAY BE SUBJECT TO A RATE AS HIGH AS 19.740 PERCENT PER YEAR.
If I am in default, you may require me to repay the entire unpaid principal balance, and any accrued interest at once. You don't have to give me notice that you are demanding or intend to demand immediate payment of all that I owe.

**UTAH RESIDENTS:** This written Agreement is a final expression of the agreement between you and us and the written agreement may not be contradicted by evidence of any alleged oral agreement.

**MARRIED WISCONSIN RESIDENTS**: Your signature confirms that this loan obligation is being incurred in the interest of your marriage or family. No provision of any marital property agreement (premarital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects the interest of the lender unless the lender, prior to the time that the loan is approved, is furnished a copy of the marital property agreement, a statement, a

decree or has actual knowledge of the adverse provision. If the loan for which you are applying is granted, your spouse will also receive notification that credit has been extended to you.

## WELLS FARGO BANK, N.A.
## SECURITY AGREEMENT – TRANSPORTATION

Borrower Name: ANDREA L HENDERSON
Co-Borrower Name: EDWARD L HENDERSON
Loan Amount: 20,099.00

"We," "our," "us," and similar words mean Wells Fargo Bank, N.A. "You" and "your" mean each person who signs the Personal Loan Agreement or this Security Agreement.

GRANT OF SECURITY INTEREST. As security for payment and performance of all obligations under the Personal Loan Agreement, and extensions and renewals thereof, you grant us a security interest in the property described below, hereinafter referred to as the "Collateral." This security interest includes all additions to, and replacements and proceeds of the Collateral, including proceeds of insurance or other products we sell you. Proceeds are money or property obtained as a result of the loss, destruction or sale of the property or any rights related to it.

Description of Collateral

| New/Used | Year | Make | Model | VIN Number |
| --- | --- | --- | --- | --- |
| U | 2007 | Toyota | FJ Cruiser | JTEBU11F270078551 |

The lien holder is:
WELLS FARGO BANK, N.A.
P.O. BOX 53439
PHOENIX, AZ 85072-3439

The Collateral is located at: 5 TEYPANA DR, TIJERAS, NEW MEXICO 87059-7829

Notwithstanding anything to the contrary in any other agreement between you and us, the Personal Loan Agreement associated with this Security Agreement/Transportation is secured only by a security interest in the Collateral and, with respect to that Personal Loan Agreement, we hereby disclaim any security interest in property other than the Collateral created by another security agreement between you and us. This disclaimer does not affect our deposit account right of setoff reserved in any deposit account agreement between you and us.

You are entering into this Security Agreement at the same time that all, one or some of you are entering into the Personal Loan Agreement. In exchange for the loan referenced above, you agree to the following terms and conditions of this Security Agreement:

**A. Ownership.** You own the Collateral. No other creditor or secured party has an interest in the collateral.

**B. Perfection.** You will perfect our security interest in the collateral. This means that you will obtain all necessary title instruments, lien releases, and other documents and sign, have notarized where required, and file all necessary instruments and documents (and pay all required costs, fees and taxes) with your state or local motor vehicle or vessel titling and registration agency to record and perfect our security interest to ensure that we are the first lien holder on the certificate of title or similar document for this Collateral within 180 days after you receive the benefit of the funds from this loan transaction.

**C. Your Warranties and Covenants.** You agree: 1) to indemnify us against all loss, claims, demands of

1/4
Documents Processed 08-08-2013, 13:11:55

liabilities of every kind caused by the Collateral; 2) to execute and deliver such documents as we deem necessary to perfect or maintain our security interest in the Collateral; 3) not to permit any lien on the Collateral, except in our favor; 4) not to remove the Collateral from the United States or Canada or use the Collateral outside the state in which you reside for more than 30 consecutive days without our prior written consent; 5) not to sell, offer to sell or otherwise transfer the Collateral or interest therein without our prior written consent; 6) not to rent, lease, or charter the Collateral; 7) not to use or permit the Collateral to be used for any improper or illegal purpose or to commit any illegal act; 8) not to use or permit the use of the Collateral in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; 9) to operate and license the Collateral in accord with all applicable statutes, rules and regulations; and 10) not to use the Collateral as a dwelling; and 11) to keep the Collateral in good condition and repair.

In addition, you agree to pay when due all license fees, registration fees, taxes, liens, assessments and other charges in connection with the Collateral. If you fail to pay any such charges, we, at our option, may pay any of them and shall be the sole judge of the legality or validity thereof and the amount necessary to discharge the same. If you fail to make repairs to the Collateral, we may, at our option, do so. Any such payments made or expenses incurred by us for such purposes shall be your obligation to us under this agreement, due and payable immediately without demand, or added to the balance outstanding under the Personal Loan Agreement, together with interest at the then current rate set forth in the Personal Loan Agreement and shall be secured by the Collateral.

**D. Our Inspection Rights.** You authorize us to inspect the Collateral at any reasonable time and you will assist us in making any such inspection.

**E. Power of Attorney.** You appoint us, through our officers, employees and agents, as your true attorney in fact, to be irrevocable until the termination of this Agreement and to perform any of the following powers, whether or not you are in default: a) to perform any obligation of yours hereunder in your name or otherwise; b) to execute all documents necessary to perfect, preserve or release our interest in the Collateral; c) to verify facts concerning you or the Collateral or proceeds therefrom by any necessary inquiry; d) to collect, receive and execute payments or other instruments related to insurance claims or losses and to apply such payments, at our sole discretion toward repayment of the obligations of this Agreement or replacement of the Collateral; e) to execute all rights, powers and remedies which you would have, but for this Agreement, under the Collateral subject to this Agreement.

**F. Your Address Changes.** You will keep the Collateral at your address shown above. You will tell us in writing, within three business days after moving, if you change your address.

**G. Costs.** All payments, advances, charges, costs and expenses, including reasonable attorneys' fees, made or incurred by the Bank in exercising any right, power or remedy conferred by this Agreement or in the enforcement thereof, shall be paid to the Bank by you immediately and without demand or, at our option, may be added to the amount due under the underlying Personal Loan Agreement and will bear interest at the rate specified therein.

**H. Default.** You will be in default of this Security Agreement if you fail to perform any obligation under this Security Agreement or the Personal Loan Agreement.

**I. Rights on Default.** If there is a default of the Personal Loan Agreement or of this Security Agreement, we may: 1) Declare the entire debt due and payable immediately; 2) Take possession of the collateral, without prior demand and without judicial process, unless otherwise required by law; 3) Take any personal property that is in or on the Collateral when we take it. We will hold the personal property for you for 10 days, but we will neither be responsible for safekeeping such property nor be required to notify you about it. If you do not pick up the property within that time, we may dispose of it in any way we determine; 4) Dispose of the Collateral in any commercially reasonable manner, including at our option, a public or private sale. Your right to get the Collateral back ends when we sell it; 5) Use the money we get from selling it to pay charges the law allows and to reduce the amount you owe us. If any money is left, we may pay it to you. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us, plus interest. We will notify you of this; 6) We may make a claim for any and all insurance or service contract benefits or refunds that may be available on your default or on the termination of

the Personal Loan Agreement and apply any amount received to the amount you owe.

**J. Insurance Purchase Requirements.** You will purchase insurance for the Collateral from an insurance company acceptable to us and you will list us as loss-payee. You agree to provide us with copies of all insurance policies covering the Collateral or other proof that insurance has been purchased. Unless you provide us with proof of insurance, we may purchase insurance at your expense to protect the bank's interest in the Collateral.

### K. Damage Insurance Provisions

Appropriate Insurance Coverage of this Agreement is:

<u>Motor Vehicles:</u> Comprehensive and Collision insurance (maximum deductible is $1000 for each). Wells Fargo Bank, N.A. must be named as Loss Payee.

**Insurance Mailing Address:** All documents relating to insurance for this loan should be forwarded to the following address:
WELLS FARGO BANK, N.A.
Insurance Service Center
P.O. Box 4050
Coraopolis, PA 15108
Phone: (800) 582-8070

WARNING: UNLESS YOU PROVIDE THE BANK WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THIS AGREEMENT, THE BANK MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT THE BANK'S INTEREST. THIS INSURANCE, MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE THE BANK PURCHASES MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY THE BANK. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE THE BANK PURCHASES MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY STATE MANDATORY LIABILITY INSURANCE LAWS. INSURANCE MAY BE PLACED THROUGH WELLS FARGO INSURANCE, INC., OR ITS LICENSED AFFILIATES. WELLS FARGO INSURANCE, INC., AND ITS AFFILIATES ARE LICENSED AGENTS AND ARE COMPENSATED BY THE INSURER FOR PLACING THE COVERAGE.

**IF YOU ARE A RESIDENT OF TEXAS,** YOU UNDERSTAND THAT INSURANCE IS REQUIRED IN CONNECTION WITH THE LOAN AND THAT YOU MAY FURNISH THE REQUIRED INSURANCE WHETHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY YOU OR THROUGH EQUIVALENT INSURANCE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF TEXAS. IF INSURANCE IS OBTAINED BY THE BANK FOR SUCH COLLATERAL AND IS SOLD FOR A PREMIUM NOT FIXED OR APPROVED BY THE TEXAS STATE BOARD OF INSURANCE, YOU WILL BE SO NOTIFIED AT THE TIME OF PURCHASE THEREOF AND MAY CANCEL SUCH INSURANCE WITHOUT CHARGE WITHIN FIVE (5) DAYS FROM THE DATE OF SUCH NOTICE IF YOU PROVIDE SUBSTITUTE EQUIVALENT COVERAGE FROM A COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.

**L. Written Changes in Terms.** Any change to this Security Agreement shall be in writing. Both of us have to sign it.

**M. Severability.** If any provision of this agreement is determined to be unlawful, the rest of this agreement will stand and the unlawful provision will be deemed amended to conform to law.

**YOUR SIGNATURE BELOW ACKNOWLEDGES THAT YOU HAVE READ AND AGREE TO THE ENTIRE SECURITY AGREEMENT, INCLUDING THE SECTION ENTITLED "DAMAGE INSURANCE PROVISIONS". YOU ACKNOWLEDGE RECEIPT OF A COPY OF THIS SECURITY AGREEMENT.**

_____  ____8-9-13____
Name of Borrower   ANDREA L HENDERSON        Date

_____  ____8-9-13____
Name of Co-Borrower   EDWARD L HENDERSON     Date


**THIRD PARTY AGREEMENT:** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, as Owner or Co-Owner of the Collateral, grants us a security interest in the Collateral. The undersigned also agree to the terms of this Security Agreement and the Personal Loan Agreement (together, the "Agreements"), except that the undersigned will not be personally liable for payment of the amount owed under the Agreements. The undersigned further agrees that we may, without notice to or demand upon the undersigned, extend, renew, or modify the Agreements one or more times, or release any party or collateral without releasing the undersigned from their obligations under the Agreements.


_____
Name and Address of Owner-Co-Owner (type or print)


_____      Date: _____
Signature of Owner-Co-Owner

| MVD-10030 REV. 02/06 | VEHICLE IDENTIFICATION NUMBER | TYPE OF TITLE | TITLE NUMBER |
|---|---|---|---|
| | JTEBU11F270078551 | DUPLICATE | 14246634A664026 |

| ENGINE OR OTHER I.D. NUMBER | PREVIOUS TITLE NUMBER AND STATE | 1ST REG | DATE OF ISSUE |
|---|---|---|---|
| | 14094934A457016 NM | 2007 | 09/03/2014 |

| YEAR | MAKE | MODEL | BODY | CYLS. | DGVW | WT./WHEELS | TYPE OF FUEL | LIENS |
|---|---|---|---|---|---|---|---|---|
| 2007 | TOYO | FJC | 4W | 06 | 0 | 4200 | GASOLINE | 1 |

1st LIENHOLDER (OR OWNER(S) IF NO LIEN)
WELLS FARGO BANK

LICENSE PLATE NUMBER(S)

PO BOX 53439
PHOENIX AZ 85072

VEHICLE CLASS: PASSENGER
CLERK: KMK

FILE DATE 01/28/2014
MATURITY DATE 08/17/2017
ODOMETER & CODE: 0100250 AM
MH SIZE: 00*000
CNTY: 00

REGISTERED OWNER(S)
HENDERSON EDWARD L

LOCATION OF MANUFACTURED HOME

5 TEYPANA DRIVE
TIJERAS NM 87059

ODOMETER CODES: AM = ACTUAL VEHICLE MILEAGE, EL = MILEAGE IN EXCESS OF MECHANICAL LIMITS OF NM = NOT ACTUAL MILEAGE-WARNING-ODOMETER DISCREPANCY

SECOND LIENHOLDER

00000

FILE DATE | MATURITY DATE

DO NOT CARRY IN VEHICLE - KEEP IN SAFE PLACE. IMPORTANT: THERE IS AN ADDITIONAL STATUTORY FEE FOR FAILURE BY PURCHASER TO APPLY FOR TRANSFER WITHIN 30 DAYS FROM DATE OF SALE.

DIRECTOR MVD

I hereby certify, that interest in the vehicle described above on this Certificate of Title is hereby released.
RELEASE OF LIEN  Name of Lienholder:_____ Full Signature of Authorized Agent _____ Date_____

This Certificate of Title is evidence of legal ownership of the vehicle described above. Upon sale of this vehicle, this certificate must be properly assigned below and presented by the purchaser to the Motor Vehicle Division for transfer. The Division is not responsible for false or fraudulent statements made in connection with this Certificate of Title or held liable for recording errors.

IMPORTANT: Buyer (except for dealer) must apply to the Motor Vehicle Division within 30 days for transfer of title and registration. Federal and state law requires the seller (including dealers) to state the odometer mileage upon transfer of ownership. ANYONE CONVICTED OF A FALSE ODOMETER STATEMENT WILL BE SUBJECT TO FINES AND/OR IMPRISONMENT.

ASSIGNMENT OF TITLE FOR THE EXACT AMOUNT OF $_____ I (we) hereby sell, assign, transfer and convey this_____day of_____, YR_____to

Buyer's Name(s):_____

Address_____
the vehicle described on the front side of this Certificate of title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE".

Name & Address of Lienholder_____

Lienholder No. (if any)_____ File Date_____ Maturity Date_____

ODOMETER DISCLOSURE STATEMENT: I (we) hereby certify that the ODOMETER READING of this vehicle is:_____ (NO TENTHS) miles and that stated mileage is (check one of the following): A ☐ the actual mileage OR B ☐_____ OR C ☐ NOT the actual mileage: WARNING-ODOMETER DISCREPANCY.

Signature(s) of Seller(s)  X_____
X_____

Signature(s) of Buyer(s)  X_____
X_____

**EXHIBIT B**